**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHWESTERN DIVISION**

| | |
|---|---|
| AARON BORLAND,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CARTHAGE, MISSOURI, et al.,<br><br>Defendants. | Case No. 3:26-cv-05062-MBB |

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANTS MICHAEL MILLER, NATE DALLY AND TRACI COX'S MOTION TO DISMISS COUNTS II AND III**

Plaintiff Aaron Borland opposes Defendants Michael Miller, Nate Dally, and Traci Cox's Motion to Dismiss Counts II and III of Plaintiff's Complaint (Doc. 28) and states as follows:

## TABLE OF CONTENTS


INTRODUCTION .......... 1

I. FACTUAL ALLEGATIONS THAT CONTROL AT THIS STAGE .......... 1

II. STANDARD OF REVIEW .......... 3

III. COUNT II PLAUSIBLY ALLEGES A SECTION 1983 CONSPIRACY .......... 3

A. The Complaint alleges the required agreement, overt acts, and constitutional injury. ..........3
B. The intracorporate doctrine does not reach conduct plausibly alleged to be outside the scope of employment and undertaken for personal or improper purposes. ..........4
C. Faulk's qualified-immunity holding does not authorize dismissal without first deciding whether the doctrine applies to the alleged conspiracy. ..........6
D. At minimum, dismissal with prejudice would be improper. ..........8
IV. COUNT III PLAUSIBLY ALLEGES TORTIOUS INTERFERENCE .......... 9

A. An at-will employment relationship may support a valid business expectancy..........9
B. Halderman's third-party holding depends on the defendant's legal role in the specific employment decision, a role not established for each movant here. ..........10
C. Alternatively, Borland should receive leave to amend Count III. ..........14
V. CONCLUSION .......... 15


## TABLE OF AUTHORITIES

**Cases**


***Asay v. Hallmark Cards, Inc***., 594 F.2d 692 (8th Cir. 1979) .......... 8
***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009) .......... 3
***Askew v. Millerd***, 191 F.3d 953, 957 (8th Cir. 1999) .......... 4
***Baude v. City of St. Louis***, 476 F. Supp. 900, 9015 (E.D. Mo. 2020) .......... 4
***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 555, 570 (2007) .......... 3
***BMK Corp. v. Clayton Corp***., 226 S.W.3d 179, 190-92 (Mo. App. 2007) .......... 13, 14
***Burbridge v. City of St. Louis***, 2 F.4th 774, 782 (8th Cir. 2021) .......... 4, 6
***Carhart v. Smith,*** 140 F. Supp. 2d 1047, 1066-67 (D. Neb. 2001)(8th Cir. 2022) .......... 5, 6, 15
***Creative Compounds, LLC v. ThermoLife Int'l, LLC***, 669 S.W.3d 330, 340-41 (Mo. App. 2023) .......... 9
***Diggs v. City of St. Louis***, 2020 WL 1248653, (E.D. Mo. Mar. 16, 2020) .......... 5, 6, 15
***Doe H.M. v. City of Creve Coeur,*** 666 F. Supp. 2d 988, 1003 (E.D. Mo. 2009) .......... 9, 10
***Dukeman v. St. Genevieve County***, 167 F. 4th 500, 503-504 (8th Cir. 2026) .......... 3
***Farrow v. St. Francis Med. Center,*** 407 S.W.3d 579, 602 (Mo. banc 2013) .......... 9, 10
***Faulk v. City of St. Louis***, 30 F. 4th 379 (8th Cir. 2022) .......... passim
***Garza v. City of Omaha***, 814 F.2d 553, 556 (8th Cir. 1987) .......... 5, 6, 15
***Gilmore v. Washington County Memorial Hospital***, 2023 WL 4120888, at *6 (E.D. Mo. June 22, 2023) .......... 7
***Goss v. Lopez***, 419 U.S. 565, 579-81 (1975) .......... 7
***Halderman v. City of Sturgeon***, 670 S.W.3d 193, 205-08 (Mo. App. 2023) .......... passim
***Helvey v. City of Maplewood***, 154 F.3d 841, 843-45 (8th Cir. 1998) .......... 12

***Jurisprudence Wireless Commc'ns, Inc. v. CyberTel Corp***., 26 S.W.3d 300, 303 (Mo. App. 2000) ........ 12, 13
***Kelly v. City of Omaha***, 813 F.3d 1070, 1078-79 (8th Cir. 2016)........ 4
***Mogard v. City of Milbank***, 932 F.3d 1184, 1190-92 (8th Cir. 2019) ........ 7
***Pollock v. Baxter Manor Nursing Home,*** 706 F.2d 236, 237 (8th Cir. 1983) ........ 7

**Statutes**

Section 1983........ 3, 6, 12

**Rules**

Rule 12 ........ 14
Rule 12(b)(6)........ 1, 3
Rule 15(a)(2) ........ 8

## INTRODUCTION

Plaintiff Aaron Borland ("Borland") submits these Suggestions in Opposition to the Motion to Dismiss Counts II and III filed by Defendants Michael Miller, Nate Dally, and Traci Cox ("the movants") in their individual capacities (Doc. 28). The motion should be denied. It treats the intracorporate-conspiracy doctrine as a categorical rule even though that doctrine, by its terms, reaches only agents acting within the scope of their employment. The Complaint alleges the opposite: a coordinated course of malicious, bad-faith conduct undertaken for improper purposes, in violation of City policy, and extending beyond any legitimate City objective. Those allegations must be accepted as true. The motion also asks the Court to decide, from job titles alone, the fact-bound question whether each movant acted for the City when interfering with Borland's employment. Rule 12(b)(6) does not permit that inference against Borland.

The City itself does not seek dismissal of a claim asserted against it. Count II is pleaded against the individual defendants, and Count III likewise is not pleaded against the City. Accordingly, no claim against the City is properly at issue in Doc. 28.

## I. FACTUAL ALLEGATIONS THAT CONTROL AT THIS STAGE

The Complaint alleges substantially more than a routine personnel decision. Borland improved the City's vendor-rebate process by replacing rebate checks with account credits, making the process more transparent and easier to account for. (Doc. 1, ¶¶ 29-30, 35-37). The police investigation found that vendor rebates were lawful and customary, that Borland's receipt of prior checks violated no City policy, and that the supposed $448 payment was in fact a credit to the City's account. (Doc. 1, ¶¶ 31, 35, 38-40). Yet City Administrator Greg Dagnan insisted,

without evidence, that the rebates were criminal 'kickbacks' and drove the investigation. (Doc. 1, ¶¶ 23, 32-33, 40-42, 50).

After Borland questioned Parks Director Abigael Almandinger ("Almandinger") about her storage of a private organization's property in a City golf-course building, Almandinger and Michael Miller (HR Director) ("Miller") placed him on administrative leave. (Doc. 1, ¶¶ 44-49). Four days after Borland invoked counsel and declined to be questioned further in the criminal investigation, Almandinger and Miller presented him with an unsupported disciplinary memorandum and forced him to choose between admitting wrongdoing or resigning in lieu of termination. (Doc.1, ¶¶ 53-60). They did not provide the disciplinary and hearing forms required by the City's own Personnel Policy Manual. (Doc. 1, ¶ 58).

The Complaint alleges that Nate Dally (City Attorney) ("Dally") specifically instructed Almandinger and Miller how to handle the termination, and Miller later testified that Dally directed them to terminate Borland or force his resignation. (Doc.1, ¶¶ 62, 75). It alleges that Dally, Cox, and the other individual defendants knew Borland was being stripped of due process and acted together with malice or bad faith for the improper purposes of taking his job and harming his reputation. (Doc.1, ¶ 61). Cox and Miller repeatedly denied Borland access to his personnel file for more than two years by invoking an 'ongoing' investigation, even though Cox later admitted she could find no ongoing matter. (Doc.1, ¶¶ 79-81). The City also communicated the false accusation that Borland had taken kickbacks to third parties, and Miller repeated under oath that Borland was a kickback suspect. (Doc.1, ¶¶ 71, 75). A state unemployment referee found no substantial evidence of willful misconduct and reversed the denial of benefits; the City did not appeal. (Doc.1, ¶¶ 76-78).

Read as a whole, these allegations plausibly describe coordinated action, overt acts, and injury. They also plausibly allege that the movants used their positions for a malicious, retaliatory, and reputation-damaging objective outside any legitimate City purpose. At the pleading stage, the Court must accept those well-pleaded allegations and draw reasonable inferences in Borland's favor.

## II. <u>STANDARD OF REVIEW</u>

A complaint survives Rule 12(b)(6) when its factual allegations, accepted as true and viewed in the plaintiff's favor, state a plausible claim for relief. ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009); ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 555, 570 (2007). Plausibility is not a probability requirement, and the Court may not choose among competing factual inferences or decide a fact-intensive affirmative defense against the plaintiff. The pleading need only give fair notice of the claim and the grounds supporting it.

Qualified immunity may be resolved on a motion to dismiss only when entitlement is apparent from the face of the complaint. *See*, ***Dukeman v. St. Genevieve County***, 167 F. 4th 500, 503-504 (8th Cir. 2026). The Court must still take Borland's factual allegations as true. The movants therefore cannot obtain dismissal by assuming the very fact their doctrine requires; namely, that all alleged conspirators acted within the scope of City employment and for the City's interests.

## III. <u>COUNT II PLAUSIBLY ALLEGES A SECTION 1983 CONSPIRACY</u>

### A. The Complaint alleges the required agreement, overt acts, and constitutional injury.

A Section 1983 conspiracy claim requires allegations that defendants conspired to deprive the plaintiff of a constitutional right, that at least one conspirator committed an overt act in furtherance of the agreement, and that the overt act injured the plaintiff. ***Askew v. Millerd***, 191

F.3d 953, 957 (8th Cir. 1999). A plaintiff may establish the agreement circumstantially because conspiracies are rarely proved by direct evidence. ***Burbridge v. City of St. Louis***, 2 F.4th 774, 782 (8th Cir. 2021). At the pleading stage, particularized facts permitting a reasonable inference of a meeting of the minds are sufficient. *See* ***Baude v. City of St. Louis***, 476 F. Supp. 900, 9015 (E.D. Mo. 2020).

Those facts are pleaded here. Dally advised the termination decision; Miller and Almandinger executed it; Cox and the others allegedly knew Borland was being denied the prescribed process; Miller and Cox continued blocking access to records needed to clear his name; and the actors maintained and repeated the unsupported criminal accusation after police evidence had negated it. (Doc. 1, ¶¶ 58-64, 71-81). The close sequence, division of roles, shared false premise, continued concealment and common retaliatory objective plausibly support agreement. The forced resignation, denial of any name-clearing process, publication of the criminal accusation and loss of employment and benefits constitute overt acts and injury. (Doc. 1, ¶¶ 57-65, 71-78, 107, 111-14).

Defendants do not seek dismissal of Count I and therefore do not presently contest the sufficiency of the underlying constitutional deprivations. (Doc. 28 at 2, note 3; 6). Their motion instead depends entirely on the intracorporate doctrine. That defense cannot be applied categorically on the pleaded facts.

**B. The intracorporate doctrine does not reach conduct plausibly alleged to be outside the scope of employment and undertaken for personal or improper purposes.**

The premise of the intracorporate rule is that a government entity and agents acting within the scope of their employment are treated as one actor. ***Kelly v. City of Omaha***, 813 F.3d 1070, 1078-79 (8th Cir. 2016). The limiting phrase matters. Long before ***Faulk v. City of St. Louis***, 30 F. 4th 379 (8th Cir. 2022), the Eighth Circuit held that an intracorporate conspiracy may

exist when individually named officials act outside the scope of employment for personal reasons. ***Garza v. City of Omaha***, 814 F.2d 553, 556 (8th Cir. 1987). ***Carhart v. Smith,*** 140 F. Supp. 2d 1047 (D. Neb. 2001)(8th Cir. 2022), applied that exception where evidence supported an inference that a university regent pursued termination for personal political reasons and outside his authority. ***Id.*** at 1066-67. And ***Diggs v. City of St. Louis***, 2020 WL 1248653, (E.D. Mo. Mar. 16, 2020) , denied dismissal because the doctrine could not apply without a showing that the defendants acted within the scope of employment; a matter the court would not decide on its own where the pleadings and briefs did not establish it. ***Id.*** at *2-3.

The Complaint brings this case within that limitation. It alleges that the movants acted maliciously and in bad faith for the improper purposes of taking Borland's job and harming his reputation; violated the City's own personnel and conduct rules; participated in a forced resignation rather than the prescribed disciplinary and hearing process; maintained an accusation contradicted by the City's investigation; and obstructed Borland's access to his records long after no investigation remained. (Doc. 1, ¶¶ 47, 50-65, 71-81). These are not bare allegations that officials imperfectly performed ordinary duties. They support the reasonable inference that defendants used City offices to pursue an unauthorized retaliatory objective.

***Faulk*** does not erase the scope requirement or establish that the doctrine always applies. To the contrary, ***Faulk*** emphasized the "fact-intensive nature" of the inquiry, recognized that decisions applying the doctrine are subject to exceptions, and observed that no authority holds the doctrine always applies or never applies. ***Faulk***, at 749-50. ***Faulk*** rejected the plaintiff's exception argument because that theory "was not plausibly pleaded." ***Id.*** at 750 n.7. Borland has pleaded that theory: the Complaint identifies the malicious and improper objective, the City rules

and mandated procedures defendants bypassed, each movant's alleged role, and the continuing acts used to deprive him of a meaningful opportunity to clear his name.

***Burbridge*** likewise does not compel dismissal. It explains that alleging 'improprieties in the execution' of ordinary duties, standing alone, does not place conduct outside the scope of employment. ***Burbridge*** at 783. Here, however, the allegations go beyond impropriety. They describe an alleged coordinated use of governmental power to retaliate for protected speech, force a resignation without required process, perpetuate a disproven criminal accusation, and conceal records for an improper, reputation-damaging purpose. Whether those acts served the City or instead served the alleged improper interests is a factual question that should not be resolved from the movants' job titles.

**C. Faulk's qualified-immunity holding does not authorize dismissal without first deciding whether the doctrine applies to the alleged conspiracy.**

Defendants read ***Faulk*** as creating automatic qualified immunity for every Section 1983 conspiracy among public employees. ***Faulk*** did no such thing. Its holding addressed a conspiracy whose allegations were entirely intracorporate and for which no exception had been plausibly pleaded. ***Id.*** at 750 & n.7. The uncertainty ***Faulk*** identified concerned whether the intracorporate doctrine applies to Section 1983 at all. ***Id.*** at 749-50. It did not hold that officials enjoy immunity when the doctrine's own factual predicate, action within the scope of employment by agents of a single entity, is absent or genuinely disputed.

The distinction is dispositive at this stage. ***Garza*** clearly recognizes that actors serving personal purposes outside the scope of employment are not treated as a single corporate actor. ***Garza*** at 556. ***Carhart*** confirms the exception may defeat the doctrine when the facts support an outside-scope, personal-purpose inference. ***Carhart*** at 1066-67. ***Diggs*** confirms that the scope premise cannot simply be assumed on a motion to dismiss. ***Diggs*** at *2-3. Because Borland

plausibly alleges that premise is absent, ***Faulk's*** qualified-immunity rationale cannot be applied without factual development.

The supplied due-process authorities confirm that the underlying liberty right alleged here is not novel. For example, ***Mogard v. City of Milbank***, 932 F.3d 1184 (8th Cir. 2019), recognizes that, although an at-will public employee ordinarily lacks a liberty interest in continued employment, an exception exists when the government creates and disseminates a false and defamatory impression in connection with discharge; in that circumstance, due process requires an opportunity to dispute the accusation at a name-clearing hearing. ***Id.*** at 1190-92. ***Pollock v. Baxter Manor Nursing Home,*** 706 F.2d 236 (8th Cir. 1983), likewise identifies publication by the governmental employer, defamatory character, and falsity as the controlling elements. ***Id.*** at 237. And ***Goss v. Lopez***, 419 U.S. 565 (1975) states the bedrock procedural rule: when government action threatens protected liberty or property, due process requires notice of the charge and a meaningful opportunity to present one's side. ***Id.*** at 579-81.

The allegations here also supply what was missing in ***Mogard***. ***Mogard*** rejected the liberty claim at summary judgment because the employee could only speculate that officials had publicized the accusation. ***Mogard*** at 1191-92. In another recent case, an Eastern District magistrate dismissed a stigma-plus claim where the complaint did not allege that the statements were made in connection with discharge, foreclosed employment opportunities, or were accompanied by a denial of process. ***Gilmore v. Washington County Memorial Hospital***, 2023 WL 4120888, at *6 (E.D. Mo. June 22, 2023). Borland, by contrast, alleges an official communication of the false kickback accusation to third parties in connection with his forced resignation, Miller's repetition of the accusation under oath, Borland's denial of wrongdoing, concrete loss of employment and benefits and the defendants' refusal to provide the required

process or records needed to clear his name. (Doc. 1, ¶¶ 56-65, 67-81). Those pleaded facts satisfy the published-authority standards and reinforce that the underlying right was clearly established.

Nor should the Court conflate uncertainty about a conspiracy doctrine with uncertainty about the underlying rights. The Complaint alleges retaliation for protected speech and deprivation of a public employee's liberty interest through stigmatizing criminal accusations without a meaningful name-clearing opportunity. (Doc. 1, ¶¶ 46-51, 58-65, 71-78). Defendants have expressly declined to challenge Count I at this time. The motion therefore supplies no basis to hold that the underlying constitutional rights were unclear. It argues only that defendants could not know a separate conspiracy theory might impose additional liability. Where the Complaint plausibly alleges defendants were not acting as one municipal actor, that argument does not justify dismissal.

**D. At minimum, dismissal with prejudice would be improper.**

If the Court concludes that Count II requires more specificity concerning which acts were outside the scope of employment or which defendants shared a personal or improper objective, Borland respectfully requests leave to amend. Rule 15(a)(2) directs courts to give leave freely when justice requires. ***Asay v. Hallmark Cards, Inc***., 594 F.2d 692 (8th Cir. 1979) confirms that when the underlying facts may support relief, the pleader should be afforded an opportunity to test the claim on the merits absent a justifying reason such as undue delay, bad faith, prejudice, repeated failure to cure, or futility. ***Id.*** at 695. The detailed chronology already pleaded, the incorporated exhibits, and defendants' own acknowledgement that Count I remains pending show that amendment would not be futile. Any dismissal should therefore be without prejudice and

with leave to plead the scope exception and each defendant's participation with greater particularity.

## IV. COUNT III PLAUSIBLY ALLEGES TORTIOUS INTERFERENCE

### A. An at-will employment relationship may support a valid business expectancy.

Missouri recognizes tortious interference with a business expectancy when a plaintiff pleads: (1) a valid business expectancy; (2) the defendant's knowledge of it; (3) intentional interference causing a breach or termination; (4) absence of justification; and (5) damages. ***Creative Compounds, LLC v. ThermoLife Int'l, LLC***, 669 S.W.3d 330, 340-41 (Mo. App. 2023). An at-will relationship remains a subsisting relationship of value and a third party's interference with it is actionable until one of the contracting parties terminates it. ***Id.*** at 340. Borland alleges a valid expectancy in his continued City employment, defendants' knowledge, their intentional and unjustified interference, his forced resignation, and approximately $200,000 in lost pay plus lost insurance, pension, and other benefits. (Doc. 1, ¶¶ 20-22, 56-65, 107, 115-120).

The Complaint also plausibly alleges lack of justification. Improper means include independently wrongful, unlawful, or tortious conduct. ***Id.*** at 341. The pleaded interference rests on retaliatory action, deliberate denial of constitutional process, defamatory criminal accusations, violation of City-mandated procedures, and obstruction of records, not merely a good-faith personnel recommendation. (Doc. 1, ¶¶ 46-65, 71-81). Those allegations satisfy the improper-means requirement at the pleading stage. *See,* **Farrow v. St. Francis Med. Center,** 407 S.W.3d 579, 602 (Mo. banc 2013).

***Doe H.M. v. City of Creve Coeur,*** 666 F. Supp. 2d 988, 1003 (E.D. Mo. 2009) reinforces both points. It recognizes that an at-will employment relationship may constitute a valid business

expectancy when continued employment is probable and carries a reasonable expectation of financial benefits. It further explains that lack of justification turns on whether the defendant had a legal right to take the challenged action. ***Id. Doe H.M.*** granted summary judgment only because Missouri statutes expressly authorized, and required, the officers to prepare and transmit the police report at issue. ***Id.*** Here, no statute or other law required the movants to force Borland's resignation, bypass the City's prescribed process, perpetuate an accusation contradicted by the police investigation, or withhold his personnel records. The Complaint instead alleges conduct contrary to City policy and constitutional obligations. ***Doe H.M.*** therefore supports, rather than defeats, the plausibility of Count III.

**B. Halderman's third-party holding depends on the defendant's legal role in the specific employment decision, a role not established for each movant here.**

Contrary to movants' position, ***Halderman*** does not hold that every municipal employee, lawyer, or records custodian is automatically the City for every act affecting an employee. It applies ***Farrow's*** rule that an officer or agent "acting for the corporation is the corporation" and then determines whether the particular defendant occupied that status in the challenged transaction. ***Halderman v. City of Sturgeon***, 670 S.W.3d 193, 205-08 (Mo. App. 2023) (quoting ***Farrow v. St. Francis Med. Ctr***., 407 S.W.3d 579, 602 (Mo. banc 2013)). The limiting words of "officer or agent" and "acting for" the principal, still require a defendant-specific inquiry. ***Halderman*** resolved that inquiry only after identifying Patterson's statutory authority over the precise discharge at issue.

The decisive facts in ***Halderman*** are unusually specific. Patterson was a member of the City's Board of Aldermen, and Missouri law expressly "charged" him with "voting on the decision whether to discharge Halderman as the City's police chief." ***Id.*** at 206. Because Patterson was part of the City's governing body and possessed statutory decisional authority over

that very discharge, the court found his position "analogous to an officer or director of a corporation" and treated him as one of the persons managing the City's employment contract. ***Id.*** The tort claim also focused exclusively on 'the City's decision to terminate [Halderman's] employment in 2017'; a decision Patterson was legally required to make as an alderman. ***Id.*** at 205-06. ***Halderman*** thus anchored Patterson's non-third-party status to his governing-body membership, his statutory vote and the precise transaction challenged; not merely to municipal affiliation.

Borland pleads a materially different decisional structure. He does not allege that Miller, Dally, or Cox sat on Carthage's governing body, possessed a statutory vote on his discharge, or were the City's final policymaking body for his employment. (Doc.1, ¶¶ 5, 7-8, 56-64, 75, 79-81). He alleges that Parks Director Almandinger and Human Resources Coordinator Miller delivered the ultimatum and forced his resignation, while City Attorney Dally, a separate actor, instructed them to terminate Borland or obtain his resignation. (Doc. 1, ¶¶ 56-63, 75). Cox's pleaded conduct is different still: as City Clerk during the relevant period, she allegedly knew Borland was denied process and later invoked an investigation she could not identify to continue withholding his file. (Doc. 1, ¶¶ 8, 61, 79-81). Those allegations concern officials with different offices, different asserted authority, and distinct acts. Nothing comparable was disputed in ***Halderman***, where state law itself established Patterson's authority to cast the City's vote.

The timing and nature of the challenged conduct also differ. Halderman's interference claim was confined to Patterson's authorized participation in one 2017 termination decision; Halderman did not allege that Patterson interfered with the City's later 2019 termination after Patterson left the Board. ***Id.*** at 205-06. Borland alleges an extended course of conduct before, during, and long after his constructive discharge: retaliation immediately after he questioned

Almandinger's private use of City property; an ultimatum imposed days after he invoked counsel in a criminal investigation; failure to use the City's required disciplinary and hearing forms; transmission of the false kickback accusation to third parties; and a records obstruction continuing for more than two years. (Doc. 1, ¶¶ 44-64, 71, 75-81). ***Halderman*** did not decide whether persons lacking final employment authority become the contracting party for all such collateral and post-discharge acts.

***Helvey v. City of Maplewood***, 154 F.3d 841, 843-45 (8th Cir. 1998), confirms why those factual differences matter. There, a city manager allegedly used governmental authority to demand that a private employer fire a bartender in retaliation for her testimony against police officers. The Eighth Circuit held that the allegation that the manager "used his position of authority to cause" the discharge stated a § 1983 claim and that the same conduct supported a Missouri tortious-interference claim against him individually. ***Id.*** at 844-45. ***Helvey*** involved a private employer and therefore does not eliminate ***Halderman's*** third-party requirement. But it demonstrates that a municipal official's use of governmental office to procure another decisionmaker's retaliatory discharge is actionable in the official's individual capacity; use of official authority does not itself make the official indistinguishable from the employer. Borland alleges a comparable procurement theory as to Dally: Dally did not cast the City's vote as a governing-body member but allegedly instructed Almandinger and Miller to impose the terminate-or-resign ultimatum after Borland engaged in protected speech and invoked counsel. (Doc. 1, ¶¶ 46, 51, 53-63, 75).

***Jurisprudence Wireless Commc'ns, Inc. v. CyberTel Corp***., 26 S.W.3d 300, 303 (Mo. App. 2000), likewise supports a defendant-specific inquiry, although its facts favored the agent. The court affirmed summary judgment for CyberTel's individual agent because there were

"neither allegations in [the] petition nor evidence" that he used improper means, acted in bad faith or self-interest, or acted outside his authority. Borland's Complaint alleges precisely what was absent there: bad faith and malice directed toward taking his job and harming his reputation; false accusations contradicted by the City's own investigative evidence; disregard of mandatory City procedures; and acts divided among Dally, Miller, and Cox. (Doc. 1, ¶¶ 31, 35, 38-43, 47, 50, 58-64, 71, 75-81). ***Halderman*** later clarified that motive and improper means alone do not establish the separate third-party element. ***Halderman*** at 206-08. But ***Jurisprudence*** still underscores that an individual agent's authority and conduct cannot be decided by title alone where, unlike there, Borland's Complaint affirmatively places both in dispute.

***BMK Corp. v. Clayton Corp***., 226 S.W.3d 179, 190-92 (Mo. App. 2007), further distinguishes cases in which the expectancy is independent of the defendant's own contract. It explains that ***Jurisprudence*** barred the claim because the defendant's contract alone created the plaintiff's expectancy, whereas a preexisting and independent relationship remains protectable even when another contract affects it. Borland's expectancy arose from his preexisting employment with the City. He was hired in 2019 and promoted in 2021; not from any contract with Miller, Dally, or Cox. (Doc. 1, ¶¶ 20-22, 116). Count III also does not merely repackage the City's contractual breach. It alleges that the individual defendants interfered with constitutional duties independently imposed on state actors, including the duties not to retaliate for protected speech and to afford name-clearing process when discharge is coupled with a stigmatizing criminal accusation. (Doc. 1, ¶¶ 15-19, 46-51, 58-65, 71-78, 117-18). Unlike ***Halderman's*** contract-centered theory against a statutory decisionmaker, Borland alleges interference with an independently existing employment expectancy through independently wrongful constitutional conduct.

***BMK*** also reinforces lack of justification. Even a defendant with a legitimate interest is justified only if it does not employ improper means, which include threats, defamation, misrepresentation of fact, and other independently wrongful conduct. ***BMK*** at 192-93. Borland alleges retaliation for protected speech, a forced-resignation ultimatum without the City's required process, publication and repetition of a false criminal accusation, and prolonged concealment of records under the guise of a nonexistent investigation. (Doc. 1, ¶¶ 46-64, 71, 75-81). Those facts do not by themselves answer ***Halderman's*** separate third-party question, but they do plausibly satisfy the distinct absence-of-justification element once the movants' claimed agency status and authority are properly tested.

Accordingly, ***Halderman*** does not permit collective dismissal based merely on the labels Human Resources Coordinator, City Attorney and City Clerk. It requires the Court to determine whether each movant was legally acting as the City in the particular transaction alleged. In ***Halderman,*** Patterson's status was established by § 106.273.2 and an appellate record following trial. The present Rule 12 record contains no comparable statute or developed evidence establishing that Dally, Miller and Cox each possessed authority to manage or terminate Borland's employment, much less that such authority encompassed the separate publication and records-obstruction acts alleged. At minimum, that defendant-specific question should not be resolved against Borland by importing Patterson's statutory role into materially different facts.

### C. Alternatively, Borland should receive leave to amend Count III.

If the Court determines that Count III does not sufficiently allege that one or more movants were third parties to Borland's employment expectancy, the appropriate remedy is leave to amend, not dismissal with prejudice. Borland can identify with greater precision each movant's legal relationship to the City, actual or asserted authority over his employment, conduct

outside any authorized representative role, and interference with the expectancy. No discovery has occurred concerning the City's delegation of authority, defendants' communications, or which official possessed final employment authority. Those facts are peculiarly within defendants' possession. Factual development is therefore appropriate, particularly because ***Halderman*** itself turned on a developed record and a statute fixing Patterson's role in the challenged decision.

## V. CONCLUSION

The Motion asks the Court to convert a scope-of-employment limitation into an irrebuttable presumption based solely on defendants' job titles. The Complaint plausibly alleges otherwise. It identifies a coordinated course of overt acts, an improper and malicious objective, departures from mandatory City procedures, the continued use of a disproven criminal accusation, and resulting constitutional and economic injury. ***Garza*** and ***Carhart*** recognize the outside-scope exception; ***Digg***s holds that scope cannot simply be assumed; and ***Faulk*** itself describes the inquiry as fact-intensive and distinguishes cases in which an exception is plausibly pleaded. Count II should therefore proceed. Count III likewise alleges a preexisting at-will expectancy, independently wrongful constitutional conduct, and distinct acts by officials whose authority over Borland's employment cannot be equated at the pleading stage with Patterson's statutory vote in ***Halderman***.

For these reasons, Plaintiff respectfully requests that the Court deny Defendants Miller, Dally, and Cox's Motion to Dismiss Counts II and III. Alternatively, if the Court finds either count insufficiently specific, Plaintiff requests leave to amend and that any dismissal be without prejudice.

**ALESHIRE ROBB, P.C.**

By *__/s/Gregory W. Aleshire__*
Gregory W. Aleshire MO #38691
William R. Robb MO #43322
2847 Ingram Mill Road, A-102
Springfield, MO 65804
417.869.3737 PHONE
417.869.5678 FAX
*info@aleshirerobb.com*
**ATTORNEYS FOR PLAINTIFF**